IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**GEORGE MOYA,**

    **Plaintiff,**

vs.                                                                                        CIV. NO. 04-0172

**KAY SCHOLLENBARGER,**
General Manager,
New Mexico State Fair,
In her Individual Capacity,

**ROBERT TAFOYA,**
Director of Operations,
New Mexico State Fair,
In his Individual Capacity,

**RAUL MONTOYA,**
Electrician, "Supervisor of All Trades,"
New Mexico State Fair,
In his Individual Capacity,

    **Defendants.**

**MEMORANDUM OPINION AND ORDER**

    **THIS MATTER** comes before the Court on Plaintiff George Moya's ("Mr. Moya") 42 U.S.C. § 1983 claim.  Mr. Moya alleges that Kay Schollenbarger, Robert Tafoya, and Raul Montoya ("Defendants"), supervisors for the New Mexico State Fair, retaliated against him for exercising his First Amendment free speech rights.  Defendants moved 1) to stay discovery pending the Court's ruling on the issue of qualified immunity; and 2) to dismiss the complaint against them pursuant to Federal Rules of Civil Procedure Rule 12(b)(6) for failure to state a claim upon which relief may be granted.   For the reasons that follow the Court **GRANTS** Defendants' Rule 12(b)(6) motion to dismiss **WITHOUT PREJUDICE**.

**I. Background and procedural history.**

Mr. Moya filed a complaint on February 17, 2004, which alleged that Defendants, his supervisors at the New Mexico State Fair ("State Fair"), unlawfully retaliated against him for exercising his First Amendment rights in violation of 42 U.S.C. § 1983.  (Compl. ¶¶ 16-18.)  Mr. Moya sued these state officials for monetary damages in their individual capacity.  (Compl. ¶ 10.) On May 27, 2004, the Court issued an opinion and order, which granted Defendants' motion for more definite statement.  (Doc. 14.)  In that order, the Court noted three deficiencies in the complaint: 1) the complaint failed to specify the alleged adverse employment action, that is, whether Defendants' retaliation was in the form of a hostile work environment, a physical injury, an involuntary separation, or all three collectively; 2) the complaint did not contain any allegations regarding the timing of Mr. Moya's speech in relation to the alleged adverse employment action; and 3) the complaint did not contain any facts regarding wrongful conduct by each individual defendant.  *Id.*

In an effort to cure the deficiencies in the complaint, Mr. Moya filed an amended complaint on June 11, 2004.  (Pl.'s First Am. Compl.)  First, Mr. Moya alleged that the hostile work environment the Defendants created in retaliation for the exercise of his First Amendment rights constituted an adverse employment action.  (Pl.'s First Am. Compl. ¶¶ 15, 17, 19-21.)  Mr. Moya also claimed that the hostile work environment created by Defendants caused a physical injury to him, which in turn led to an involuntary separation.  (Pl.'s First Am. Compl. ¶¶ 12-14.) Second, Mr. Moya responded to the Court's concern regarding the timing of the adverse employment action in relation to the speech at issue by alleging that Defendants created a hostile work environment in "close temporal proximity" to his protected speech.   (Pl.'s First Am.

Compl. ¶ 18.)  Third, Mr. Moya alleged that each defendant wrongfully: i) ignored the illegal use of his plumber's license to cover up work done by unlicensed plumbers and condoned supervision by unqualified personnel; ii) ignored his reports about the illegal exploitation of State Fair employees and violations of the Fair Labor Standards Act and the Family Medical Leave Act; and iii) personally and politically benefitted by creating the false appearance that work was being done properly and failing to deal with "corruption and scandal" at the State Fair.  (Pl.'s First Am. Compl. ¶ 16 A-C.)

In response, Defendants filed a motion to stay discovery and a Rule 12(b)(6) motion to dismiss.

**II. Analysis.**

**A. It is unnecessary for the Court to rule on the motion to stay discovery.**

The Court need not rule on Defendants' motion to stay discovery.  Defendants correctly assert that when a qualified immunity defense is raised on a motion to dismiss the Court should postpone all discovery until it determines whether Defendants are entitled to qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Workman v. Jordan*, 958 F.2d 332, 336 (10th Cir. 1992).  Since Defendants' Rule 12(b)(6) motion to dismiss is granted, however, it is unnecessary for the Court to rule on Defendants' motion to stay discovery.

**B. Standard of review.**

The Court should not grant a motion to dismiss unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  FED. R. CIV. P. 12(b)(6); *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pleaded factual allegations in the

complaint as true and view them in the light most favorable to the non-moving party. *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1231 (10th Cir. 2002). However, where a qualified immunity defense is asserted in a Rule 12(b)(6) motion to dismiss, the Court applies "a heightened pleading standard, requiring the complaint to contain 'specific, non-conclusory allegations of fact that . . . if proved, demonstrate that the actions taken were not objectively reasonable in light of clearly established law.'" *See Dill v. City of Edmond, Oklahoma*, 155 F.3d 1193, 1204 (10th Cir. 1998) (internal citations omitted).

As an initial matter, Mr. Moya's allegations contain conclusory statements, with few specific facts to support them. He broadly alleges that: "Defendants systematically and deliberately exposed Plaintiff to a hostile work environment as retaliation for speaking on matters of public concern." (Pl.'s First Am. Compl. ¶ 15.) But Mr. Moya offers no incidents to support this claim. Mr. Moya connects Defendants' creation of a hostile work environment to his speaking out by noting only that the adverse employment action occurred in "close temporal proximity" to Mr. Moya exercising his free speech rights. (Pl.'s First Am. Compl. ¶ 18.) The Court, however, is not provided with any dates or time frame to make this determination. With respect to each individual defendant, Mr. Moya claims that they ignored his complaints about illegal activities occurring at the State Fair and that they personally and politically benefitted from doing so. (Pl.'s First Am. Compl. ¶ 16 A-C.) Yet Mr. Moya provides no specific examples of corruption or details of how Defendants benefitted from ignoring his complaints.

Moreover, Mr. Moya promises that discovery will bring more facts to light so that Defendants can prepare their case. (Pl.'s First Am. Compl. ¶ 24.) Mr. Moya, however, must provide some specific allegations under the heightened pleading standard associated with the

qualified immunity defense to survive a Rule 12(b)(6) motion to dismiss. *See Dill*, 155 F.3d at 1204. The Court finds that Mr. Moya failed to allege specific facts that show a violation of his free speech rights in either the complaint or the first amended complaint. The Court, therefore, views Mr. Moya's allegations as conclusory statements and grants Defendants' motion to dismiss for failure to state a claim. Despite Mr. Moya's failure to allege any specific facts that would state a claim for violation of his First Amendment rights, an analysis of the qualified immunity issue follows.

### C. The qualified immunity defense.

Our courts recognize two kinds of immunity defenses: absolute immunity and qualified immunity. *See Harlow,* 457 U.S. at 807. The defense of absolute immunity is available to "officials whose special functions or constitutional status requires complete protection from suit . . . ." *Id.* For instance, legislators are entitled to absolute immunity in their legislative functions and judges are entitled to absolute immunity for actions taken in their judicial capacity. *Id.* For other government officials, however, "our cases make plain that qualified immunity represents the norm." *Id.*

The qualified immunity defense attempts to strike a balance between "the importance of a damages remedy to protect the rights of citizens, but also 'the need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority.'" *Id.* (internal citations omitted). Without the qualified immunity defense, courts would struggle to curtail the substantial social costs associated with harassing litigation involving government officials, including the fear that personal monetary liability would "unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635,

5

638 (1987).

The doctrine of qualified immunity, therefore, shields government officials performing discretionary functions from liability for civil damages arising from 42 U.S.C. § 1983 claims brought against them in their individual capacities. *Harlow*, 457 U.S. at 818. Moreover, the courts draw no distinction between 42 U.S.C. § 1983 suits against state officials and suits against federal officials under the Constitution. *Id.* Because Defendants are state officials being sued in their individual capacity under 42 U.S.C. § 1983, their assertion of the qualified immunity defense is proper. Individual government actors retain their immunity unless the plaintiff can show that they violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. The Court in this case could not hold Defendants liable unless they violated a clearly established constitutional right. The Supreme Court reasoned that: "If the law at that time was not clearly established, an official could not reasonably be expected to 'know' that the law forbade conduct not previously identified as unlawful." *Id.* at 819.

The Court, therefore, must first determine "whether the plaintiff has alleged a deprivation of a [statutory or] constitutional right at all" and only if the answer to that question is yes does the Court consider whether that right was clearly established at the time so that reasonable officials would have understood that their conduct violated that right. *County of Sacramento v. Lewis*, 523 U.S. 833, 841, n.5 (1998); *Trotter v. The Regents of the Univ. of New Mexico,* 219 F.3d 1179, 1184 (10th Cir. 2000). Yet a plaintiff must do more than identify a clearly established right in the abstract and allege that the defendant violated that right. *Anderson*, 483 U.S. at 640. Although Mr. Moya has a clearly established constitutional right to free speech under the First

Amendment, he can not simply allege that Defendants violated that right.  He must also allege sufficient facts that, if true, would show that Defendants violated his First Amendment rights.  Mr. Moya has failed to do so.

For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Anderson*, 483 US. at 640.  The official action does not have to have previously been declared unlawful, "but it is to say that in the light of pre-existing law the unlawfulness must be apparent."  *Id.*  In other words, for the law to be clearly established at the time of the alleged violation there must be a Supreme Court or Tenth Circuit case, which recognizes that right.  *See, e.g., Dill*, 155 F.3d at 1204.

The Tenth Circuit has held that:  "A public employer cannot retaliate against an employee for exercising his constitutionally protected right of free speech."  *Dill*, 155 F.3d at 1201 (internal citations omitted).  It has also held that an "employment action short of discharge may give rise to First Amendment claims."  *Id.* at 1205 (internal citations omitted).  The denial of promotions, transfers and other employment opportunities, for example, may give rise to First Amendment claims.  *Rutan v. Republican Party of Illinois*, 497 U.S. 63 (1990); *Dill*, 155 F.3d at 1205.  In this case, however, no such actions occurred.  Defendants' failure to respond to Mr. Moya's complaints did not violate any established free speech rights.  The Court must determine, therefore, "whether [Mr. Moya's] complaint sufficiently alleges [any other] facts that, if proven, would constitute a First Amendment free speech claim."  *Dill*, 155 F.3d at 1204.  Mr. Moya did not allege any facts that would constitute a First Amendment claim.

**D. Mr. Moya's First Amendment claim.**

A public employee will prevail on a First Amendment claim against a government employer if the Court determines that: 1) the employee's speech involved a matter of public concern; 2) if so, that the employee's interest in the type of expression outweighs the employer's interest in regulating employee speech to promote an efficient workplace; 3) the employee shows that the speech was a substantial factor in the adverse employment action; and 4) the employer can not show by a preponderance of the evidence that it would have acted the same way toward the employee in the absence of the protected speech. *See Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968); *Belcher v. City of McAlester, Oklahoma*, 324 F.3d 1203, 1206-07 (10th Cir. 2003).

***1. Did Mr. Moya engage in constitutionally protected speech?***

First, Mr. Moya must establish that he engaged in protected speech on a matter of public concern. Whether an employee's speech addresses a matter of public concern depends on the content, form, and context of the statements and whether the speech can "be fairly considered as relating to any matter of political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146-48 (1983); *see also Belcher*, 324 F.3d at 1207-08 (finding that firefighter's expression of concern to city council members over the purchase of a new fire truck with city tax dollars involved a matter of public concern); *Dill*, 155 F.3d at 1202 (finding police officer's comments that exculpatory evidence was withheld in a murder investigation involved a matter of public concern); *but see Koch v. City of Huchinson*, 847 F.3d 1436, 1443-44 (10th Cir. 1988) (holding that fire marshal's report concerning the cause of a fire did not involve a matter of public concern). With respect to Mr. Moya, the Court knows only of the content of his speech. Mr.

8

Moya complained to his supervisors that his plumber's license was being used to allow unlicensed plumbers to obtain work permits.  Yet Mr. Moya's initial complaint and his subsequent amended complaint provide no information regarding the form his complaints and the illegal use of his plumber's license took or the context in which the complaints and the use of his license occurred.

Speech relating to internal personnel disputes and the specific concerns of the employee generally does not implicate matters of public concern.  *Dill*, 155 F.3d at 1202.  Several of Mr. Moya's allegations focused on the conditions of his employment as a plumber with the New Mexico State Fair.  Mr. Moya alleges, for instance, that Defendants illegally used his plumber's license to obtain permits for unlicensed plumbers to perform work.  (Pl.'s First Am. Compl. ¶ 16 A-C.)  Mr. Moya also alleges that Defendants "systematically and deliberately exposed Plaintiff to a hostile work environment" in retaliation for his complaining to them.  (Pl.'s First Am. Compl. ¶ 15.)  This statement is too conclusory to require a response from Defendants.  Mr. Moya claims that Defendants condoned work done by unqualified personnel and that the hostile work environment created by Defendants caused him to get injured, which led to Mr. Moya's involuntary separation from his plumbing job without describing what his injury was or how and to what extent it was related to his separation.  (Pl.'s First Am. Compl. ¶ 20.)

In addition, Mr. Moya's other statements may touch on matters of public concern.  The Tenth Circuit noted that "speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of city officials . . . clearly concerns matters of public import."  *Dill*, 155 F.3d at 1202 (internal citations omitted).  Mr. Moya claims that Defendants ignored his reports about the illegal exploitation of State Fair employees, as well as violations of the Fair Labor Standards Act and the Family Medical Leave Act.  (Pl.'s First Am. Compl. ¶ 16 A-C.)  He

9

also alleges that Defendants ignored the wide scale corruption of other supervisors at the State Fair. *Id.* Mr. Moya in this context may have spoken primarily as a concerned citizen, not as a self-interested employee. *See Connick*, 461 U.S. at 147. In attempting to expose a possible cover up, rather than to air personal grievances about working conditions at the State Fair, Mr. Moya's reports may involve a matter of public concern.

Second, the Court must weigh Mr. Moya's interest in commenting on matters of public concern against the State Fair's interest in maintaining an efficient work environment. In weighing the State Fair's interest, the Court can consider to what degree a close working relationship is essential to carrying out the public responsibilities of the office. *Belcher*, 324 F.3d at 1209. More deference is given to a public employer with respect to law enforcement, where loyalty and harmony among employees is especially important. *Id.; see also Jantzen v. Hawkins*, 188 F.3d 1247, 1257-58 (10th Cir. 1999). This is not the case here. The State Fair employed Mr. Moya as a plumber. The State Fair's interest in maintaining harmony among its employees and running an efficient workplace is not as significant as in the context of law enforcement. The Court can also take into account whether the employee used internal rather than external channels to exercise their free speech rights. *Belcher*, 324 F.3d at 1208. In this case, Mr. Moya went up the chain of command, complaining to his supervisors. He did not exercise his free speech rights in an external, public forum. This favors Mr. Moya in balancing his interest in free expression against the State Fair's interest in maintaining an effective working environment.

Moreover, although the government employer need not "wait for speech actually to disrupt core operations before taking action," Defendants can not restrict Mr. Moya's First Amendment rights unless they show the restriction is necessary to prevent the disruption of

10

official functions. *See, e.g., Belcher*, 324 F.3d at 1209; *Dill*, 155 F.3d at 1203. Mr. Moya's primary complaint is that Defendants "ignored" his reports to them and politically and "personally benefitted" by not addressing Mr. Moya's complaints. (Pl.'s First Am. Compl. ¶ 16 A-C.) Failing to respond to an employee's complaints, however, does not constitute a restriction on that employee's exercise of First Amendment rights. Mr. Moya has also failed to provide sufficient facts that would allow the defense to respond to his allegations of a hostile work environment. Mr. Moya's interest in speaking out about what occurs at the State Fair, therefore, *may* outweigh Defendants' interests in promoting an efficient work environment but because so few facts were alleged in the two complaints it is difficult for the Court to analyze this prong of the First Amendment claim.

### *2. Mr. Moya has not shown that the speech was a substantial factor in the adverse employment action.*

Even if Mr. Moya's speech involved a matter of public concern, he has not alleged sufficient facts to show that the speech was a substantial factor in the adverse employment action, if any. Neither of Mr. Moya's complaints, for example, indicate to the Court what the hostile work environment was, nor what Mr. Moya's injuries were, nor how, if at all, they were related to each other and to Mr. Moya's separation from his State Fair job. In other words, Mr. Moya has not alleged sufficient facts that show any adverse employment action taken against him by Defendants. He has also failed to show that his complaining to his supervisors was a substantial factor in any adverse employment action. Neither of Mr. Moya's complaints contain "specific, non-conclusory allegations of fact that . . . if proved, demonstrate that the actions taken were not objectively reasonable in light of clearly established law." *Dill*, 155 F.3d at 1204 (internal

quotations omitted).

**IT IS HEREBY ORDERED: Defendants' Rule 12(b)(6) motion to dismiss Mr. Moya's suit for failure to state a claim is Granted. The case will be dismissed Without Prejudice, each side to bear their own costs and fees.**

*/s/ Robert Brack*

_____

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**